Jay D. Gurmankin, #1275
Christopher R. Hogle, #7223
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

*Attorneys for Plaintiff,*
 *Park Restaurant Holdings, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PARK RESTAURANT HOLDINGS, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>IRA PLATT, an individual; LEGACY POOL HOLDINGS, LLC, a Delaware Limited Liability Company; and GEORGIANA VENTURES, a Delaware Limited Liability Company,<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No. _____ |

Plaintiff, Park Restaurant Holdings, LLC ("PRH"), hereby complains of defendants, Ira Platt ("Platt"), Legacy Pool Holdings, LLC ("LPH"), and Georgiana Ventures, LLC ("GV"), and, for cause of action, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. PRH is a Nevada limited liability company, with its principal place of business in Park City, Utah. PRH owns and operates a popular restaurant known as Flanagan's on Main ("Flanagan's") in Park City, Utah.

2. Defendant Ira Platt is, on information and belief, a citizen of Connecticut. Platt was a manager of PRH from November, 2008, until April, 2011, and, on information and belief, Platt owns property in Utah.

3. Defendant Legacy Pool Holdings, LLC ("LPH") is, on information and belief, a Delaware limited liability company, with its principal place of business in Connecticut. LPH is, on information and belief, owned and controlled by Platt.

4. Defendant Georgiana Ventures, LLC ("GV") is, on information and belief, a Delaware limited liability company, with its principal place of business in Connecticut. On information and belief, GV is owned and controlled by Platt and does business within the State of Utah. On information and belief, Platt was at all relevant times, acting as an agent of GV.

5. This Court has subject matter jurisdiction over this lawsuit based on diversity of citizenship under 28 U.S.C. § 1332, because PRH is a Nevada corporation, with it principal place of business in Utah while, on information and belief, Platt is a citizen of Connecticut, LPH and GV are Delaware corporations with their principal places of business in Connecticut, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

7. From November, 2008, until April, 2011, Platt was a manager of PRH, and from about June 2009, until on or about April 12, 2011, he alone directed and controlled the operations of PRH's restaurant, Flanagan's, in Park City, Utah.

8. As a PRH manager, Platt owed PRH fiduciary duties.

9. During Platt's term as manager of PRH, his actions were subject to the Amended and Restated Limited Liability Company Operating Agreement of Park Restaurant Holdings, LLC, a Nevada Limited liability Company ("Operating Agreement").

10. Platt breached his fiduciary duties and the Operating Agreement in numerous respects.

11. From March, 2010 until April, 2011, Platt improperly caused PRH to make payments to LPH, which was owned and controlled by Platt. In connection with such conduct, Platt acted as an agent of LPH. Platt had received no consent or permission to engage in such self-dealing.

12. Platt caused PRH to make the payments to LPH through a sham assignment to LPH of a "Consulting Agreement" between PRH and Charles Saccio ("Saccio"), which PRH and Saccio entered into on or about November 5, 2008. Under the Consulting Agreement, Saccio agreed to provide certain services to PRH in exchange for monthly payments of 4% of PRH's net sales.

13. The Consulting Agreement itself specifically provides that it is not assignable.

14. Despite this, on or about March 1, 2010, Platt caused LPH to substitute for Saccio under the Consulting Agreement.

15. Platt attempted to cause PRH to "consent" to the purported assignment on March 8, 2010, and, in fact, he signed a consent on behalf of PRH. (The consent, however, was to an assignment of a contract between "Hungry Moose" and PRH, rather than the actual consulting contract between Saccio and PRH, so the consent in any event would not shield Platt's self-dealing.) Platt failed to inform any of PRH's members of either his intent to substitute LPH for Saccio under the Consulting Agreement, or his intent to cause PRH to consent to an assignment.

16. Platt falsely certified that a meeting of the "board of directors" of PRH was convened on March 12, 2010 (even though, as an LLC, PRH has no board of directors), which resulted in a resolution purportedly approving the assignment – a resolution signed exclusively by Platt.

17. Following the assignment, LPH received the following payments from PRH:

| Date | Amount |
| --- | --- |
| 3/17/2010 | $11,248.76 |
| 4/1/2010 | $8,352.31 |
| 5/5/2010 | $1,908.28 |
| 6/25/2010 | $741.69 |
| 12/31/2010 | $19,221.86 |
| 2/6/2011 | $13,853.35 |
| 2/11/2011 | $8,490.93 |
| 2/19/2011 | $9,406.37 |
| 3/5/2011 | $4,962.10 |
| 4/8/2011 | $5,033.35 |

18. As of the time PRH ceased making these payments when Platt was replaced as manager in April, 2011, LPH had received a total of $83,219.00 from PRH pursuant to the invalid and self-interested assignment.

19. Members of PRH on numerous occasions confronted Platt and asked why he had not caused PRH to itself buy out Saccio from the consulting agreement. In response, Platt falsely replied, including in an August 10, 2010 email to PRH member Jeremy Vereeke, that "PRH had zero capital at that time." Platt's statement amounted to willful, malicious and intentionally fraudulent conduct. When Vereeke took over management in the spring of 2011, he discovered that Platt had lied about PRH's financial wherewithal. Not only did PRH have over $250,000 in a bank account at the time Platt substituted LPH for Saccio under the consulting agreement, but Platt caused PRH to pay LPH $19,601.07 within 17 days the assignment.

20. Furthermore, the consulting agreement was terminable at the time Platt substituted LPH for Saccio thereunder. The consulting agreement required Saccio to provide regular reporting and other services, which had not been provided. Such non-performance discharged and excused PRH's performance under the consulting agreement. Accordingly, Platt should have simply terminated the consulting agreement. Instead, he unlawfully assumed it for his own personal gain at the expense of PRH, and he lied in order to legitimize his conduct.

21. Platt joined and aided and abetted a civil conspiracy involving Stephen Hamile ("Hamile"), the Hamile-controlled Auld Irish Holdings, LLC ("AIH"), the Hamile-controlled Restaurant Management Associates ("RMA"), the Hamile-controlled Burlingame Co., L.P. ("Burlingame"), and the Hamile-controlled Hamile Family Trust ("Hamile Trust").

22. Hamile devised a scheme in which AIH encouraged investors to invest hundreds of thousands of dollars to establish Irish pub-style restaurants and bars, from which he would embezzle funds.

23. Hamile and AIH were involved in PRH. Hamile was a PRH co-manager, he exercised near total control of PRH from about November 2008 until June 2009, and he repeatedly used PRH funds for his own personal benefit.

24. Part of Hamile's scheme involved two loans that the Hamile Trust and Burlingame allegedly made to PRH. As a PRH manager, Hamile signed two promissory notes in favor the Hamile Trust and Burlingame, which together totaled almost $70,000. Such loans were *ultra vires* and void *ab initio* because the PRH operating agreement then in effect required the approval of three managers for any loan involving PRH. Hamile was the only manager to approve the loan, and as an interested party, his approval did not count.

25. The other PRH members became suspicious of Hamile. Platt indicated that with his business experience, he could be trusted to take over control of Flanagan's and examine its books and records to investigate the propriety and extent of Hamile's actions. Platt promised an audit of PRH's expenses by a third-party accountant.

26. In or about June, 2009, Platt assumed sole control of PRH's operations. Instead of exposing Hamile's wrongdoing, however, Platt joined in them.

27. Platt and Hamile worked together to circumvent the Class B members' right under the Operating Agreement to accelerated payments. Platt and Hamile owned or controlled Class A PRH membership interests. All of the Class B investors were promised accelerated distributions to the extent of their investments, prior to any distributions to the Class A members,

including Platt and Hamile. To date, Hamile and Platt have received net profits from PRH, while not a single Class B member has received any monies.

28. Platt and Hamile were co-owners of LPH, which was the vehicle Platt used to misappropriate $83,219.00 from PRH.

29. Platt assumed Hamile's *ultra vires* "loans" to PRH, and Platt caused PRH to make loan payments to himself at 9.5% interest. Platt also assumed Hamile's interest in LPH.

30. To cover-up his and Hamile's wrongdoing, Platt fabricated a "thorough audit." In an August 2, 2010 letter to the PRH members, Platt wrote that he caused a "forensic accountant" to conduct a "thorough audit of our financial expenses from inception," which concluded that "most of the expenses had suitable supporting documentation," and that other expenses merely lacked "accurate details" and would require "undue cost and delay" to pursue.

31. The "thorough audit" never occurred, as later revealed by the "forensic accountant" who, according to Platt, had performed the audit. Not only was the "thorough audit" fabricated, but despite requests, Platt has never provided any of the alleged "supporting documentation" that Platt assured PRH members justified most of the expenses, including approximately $70,000 in payments made directly by PRH to pay Hamile's credit card debt.

32. Platt fabricated the audit and deliberately misled PRH members in his August 2, 2010 letter to cover-up embezzlement and self-dealing involving himself, Hamile, AIH, Burlingame and the Hamile Trust.

33. To cover-up their financial misconduct, Hamile and Platt purposefully failed to maintain PRH's books and records in Park City, Utah, as was required by PRH's building lease and their promises to PRH members.

34. At some point, Platt substituted a new Hamile entity, RMA, into Flanagan's management. Platt caused PRH to pay over $45,000.00 to RMA without any apparent consideration from RMA. Despite repeated requests from PRH member and current manager, Jeremy Vereeke ("Vereeke"), and PRH's accountant, Platt has failed to provide an alleged contract between PRH and RMA, or any information, that would justify PRH's payments to RMA.

35. Platt engaged in other acts of self-dealing, including, but not limited to, surrendering Flanagan's club liquor license so that Platt's under-age children could enter the club portion of the restaurant. To justify his conduct, Platt wrote in a March 13, 2011 email to PRH members that "we were in clear violation of our Restaurant license and we surrendered it for Social Club license as we were at risk of being shut down." The compliance officer assigned to Flanagan's at the Utah Department of Alcoholic Beverage Control ("UDABC"), Abe Kader, has denied that Flanagan's was ever at risk for being shut down. He further indicated that Flanagan's has never been given any notice of violation. If what Platt wrote was true, certain documentation would exist in the UDABC file for Flanagan's, but according to Mr. Kader, none exists. The loss to PRH from the surrender of its club liquor license could well be in the hundreds of thousands of dollars.

36. Platt also misappropriated PRH assets for his own personal benefit, including by causing PRH to pay for his personal liability insurance.

37. The assets that Platt misappropriated for his personal benefit include membership units of PRH. Platt misappropriated units, including, but not limited to, treasury units held in the name of PRH, and he placed them, along with other membership units, in GV.

38. In his capacity as manager, Platt also made false statements to the UDABC, denying that a change in ownership of PRH ever occurred. When UDABC suspected his false statements, Platt hired a law firm to deliver a change-in-ownership fee rather than deal with UDABC himself.

39. Platt mismanaged PRH and caused PRH to incur thousands of dollars in late-filing penalties to the Utah State Tax Commission, the U.S. Treasury, and the Summit County Health Department.

40. PRH will prove that Platt purposefully and repeatedly misled PRH's members in his letters and e-mails to them in his attempts to cover up his duplicity.

## FIRST CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT PLATT)

41. PRH incorporates by reference all of the foregoing allegations.

42. As PRH's manager, Platt owed PRH fiduciary duties, including, but not limited to, duties to refrain from converting PRH's assets, duties to refrain from self-dealing, duties of full, accurate, and timely disclosure, and duties to refrain from misappropriating corporate opportunities.

43. Platt breached these duties, including by converting PRH's assets, causing PRH to make substantial payments to himself, LPH, Hamile, AIH, RMA, Burlingame, failing to make full, accurate, and timely disclosures of material facts, and misappropriating a potential corporate opportunity.

44. Platt's breaches of fiduciary duties proximately caused PRH to suffer damages in an amount to be proven at trial.

45. Platt's acts and omissions were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others, justifying an award of punitive damages against him.

### SECOND CAUSE OF ACTION – CONSPIRACY TO BREACH FIDUCIARY DUTY AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANTS PLATT AND LPH)

46. PRH incorporates by reference all of the foregoing allegations.

47. Platt breached his fiduciary duties owed to PRH.

48. LPH knowingly participated in Platt's fiduciary duty breaches.

49. Platt and LPH combined to accomplish the fiduciary duty breaches described herein, and they had a meeting-of-the-minds on such object and course of action.

50. Platt or LPH committed one or more overt acts in furtherance of their conspiracy.

51. Platt and LPH's conduct proximately caused PRH to suffer damages in an amount to be proven at trial.

52. Platt and LPH's acts and omissions were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others, justifying an award of punitive damages against them.

### THIRD CAUSE OF ACTION – CONSPIRACY TO BREACH FIDUCIARY DUTY AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (AGAINST DEFENDANT PLATT)

53. PRH incorporates by reference all of the foregoing allegations.

54. Hamile was a manager of PRH, who breached his fiduciary duties to PRH, including by misappropriating PRH assets for his own personal benefit, causing PRH to make

unsubstantiated "loan" repayments to him and his entities, and self-dealing through his entities, AIH, RMA, and Burlingame.

55. Platt knowingly participated in Hamile's breach of fiduciary duty breaches.

56. Platt and Hamile combined to accomplish the fiduciary duty breaches described herein, and they had a meeting-of-the-minds on such object and course of action.

57. Platt or Hamile committed one or more overt acts in furtherance of their conspiracy.

58. Platt and Hamile's conduct proximately caused PRH to suffer damages in an amount to be proven at trial.

59. Platt's acts and omissions were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others, justifying an award of punitive damages against him.

### FOURTH CAUSE OF ACTION – BREACH OF OPERATING AGREEMENT
### (AGAINST DEFENDANT PLATT)

60. PRH incorporates by reference all of the foregoing allegations.

61. Platt was bound by the Operating Agreement.

62. Platt breached the Operating Agreement and the covenant of good faith and fair dealing implied in the Operating Agreement. Platt's breaches of the Operating Agreement are material, and they excuse and discharge any performance due Platt under such agreement.

63. Platt's Operating Agreement breaches caused PRH to suffer damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION – DECLARATORY RELIEF
### (AGAINST DEFENDANTS PLATT AND GV)

64. PRH incorporates by reference all of the foregoing allegations.

65. A dispute has arisen between PRH, Platt, and GV concerning the number of membership units, if any, GV and Platt are entitled to own or control. Platt and GV contend that Plat and GV control and own approximately 30.54% of PRH. PRH contends that Platt and GV are entitled to own and control substantially less shares, if any. PRH contends that Platt's material breaches of the Operating Agreement, committed as an agent of GV, excuse and discharge any performance of the Operating Agreement in favor of Platt and GV. PRH further contends that GV, through Platt, materially breached its duties arising out of the Operating Agreement, which also excuses and discharges PRH's performance of the Operating Agreement in favor of GV.

66. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, PRH is entitled to a decree from this Court as to the number and class of units, if any, that Platt and GV control and own.

67. Declaratory relief is presently necessary and appropriate so that PRH may govern itself properly under the terms of the Operating Agreement.

WHEREFORE, PRH asks that the Court enter a judgment for the following relief:

A. Compensatory and punitive damages in an amount to be proven at trial;

B. An award of costs and both pre- and post-judgment interest;

C. Attorneys fees;

D. A decree from this Court as to the number and class of PRH membership units, if any, that Platt and GV control and own; and

E. Any other relief in law or equity to which PRH is entitled.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PRH hereby demands a jury on all issues triable of right by a jury.

DATED this 16th day of November, 2011.

Respectfully submitted,

_____
Jay D. Gurmankin
Christopher R. Hogle
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
*Counsel for Plaintiff,*
*Park Restaurant Holdings, LLC*

Plaintiff's address:

1912 Sidewinder Drive, Suite 200A
Park City, Utah 84060

5273541_1.DOCX